**UNITED STATES of America for the Use and Benefit of ACME LIMESTONE COMPANY, a corporation**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, and Mountain State Construction Company, Incorporated.**

**Civ. A. No. 74–176.**

United States District Court,
W. D. Virginia.

Dec. 16, 1975.

G. Marshall Mundy, Sam Garrison, Roanoke, Va., W. H. File, Jr., Beckley, W. Va., for plaintiff.

Charles W. Yeager, Dean E. Lewis, Charleston, W. Va., for Mountain State Const. Co., Inc.

James K. Brown, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for U. S. Fidelity & Guaranty Co.

## OPINION AND JUDGMENT

DALTON, District Judge.

This controversy arises over failure of defendant Mountain State Construction Company, Inc. (hereinafter Mountain State) to pay for materials delivered to it by use plaintiff, Acme Limestone Company (hereinafter Acme). Defendant Mountain State has counter-claimed for consequential damages as a result of use plaintiff's untimely delivery of the same materials.[1] Use plaintiff has moved for summary judgment against defendant Mountain State on its counterclaim, also pointing out that the amount due and owing on Mountain State's account has been effectively stipulated.[2] For that reason use plain-

---

[1] The materials involved in the contract between the parties are described in the contract paragraph marked "QUANTITY": "coarse aggregate" and "fine aggregate", the latter also referred to as "manufactured limestone sand". Only the fine aggregate or manufactured limestone sand is involved in the action under consideration. The coarse aggregate was provided by another material-

man pursuant to the contract paragraph marked "PRICE".

[2] Defendant Mountain State, in paragraph six (6) of its Answer admits that it has not paid the sum of $6,585.95, but denies that the sum is due and owing. The only reason revealed by the pleadings as to why the sum is not due and owing is found in the counter-

tiff urges the Court, if it grants the Motion for Summary Judgment, to find for use plaintiff in the amount of $6,585.95, plus interest from July 1, 1974. The Court grants use plaintiff's Motion for Summary Judgment against defendant Mountain State on the latter's counterclaim. Since the Court finds that the issues presented in the counterclaim constitute the only defense to use plaintiff's claim,[3] the Court also grants judgment for use plaintiff against defendants in the amount of $6,585.95 plus interest from July 1, 1974.

The summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. After a review of opposing affidavits and depositions the Court concludes that no genuine issue exists as to whether Acme *effectively* performed its obligations under the contract between it and Mountain State. In reviewing the affidavits and depositions, several rules have been kept in mind in order to aid the Court in ascertaining the weight to be assigned the opposing documents. The application of these rules to the various allegations made in documents submitted by Mountain State support the Court's conclusions that these documents fail to properly raise a genuine issue of material fact.

The gist of the counterclaim concerns a series of deliveries of fine aggregate from Acme to Mountain State at the Gathright Dam site, Covington, Virginia, in the fall of 1972. In September 1972, Mountain State was involved in simultaneous construction of three separate structures requiring concrete. Stockpiles of fine aggregate were not maintained at a level sufficient to allow this simultaneous construction. As a result, work was ceased periodically on one or more of the structures until the stockpiles could be replenished. This situation continued intermittently during the months of October, November, and into December, 1972. Deliveries from Acme then again maintained the stockpiles at acceptable levels. Additionally, Mountain State's requirements decreased. No delays were thereafter encountered as a result of fine aggregate shortages.

Acme has admitted that this situation existed, but contends that it was caused by a combination of over-ordering by Mountain State and equipment breakdown at Acme's plant. Mountain State answers these assertions by saying there was an increase in production of fine aggregate in October, 1972 over September, 1972. Mountain State is uncertain as to how this could occur if there was a plant breakdown in October as stated by Acme. Mr. Dean Lewis, President of Mountain State, stated in his affidavit that "on information and belief" Acme furnished other customers with fine aggregate during the period in controversy.

The Court finds that Mountain State has misread the delivery schedule provided by Acme as Exhibit "G" to their depositions. Mountain State's memorandum in opposition to Acme's Motion for Summary Judgment alleges that more than 16,000 tons of fine aggregate were

---

claim by Mountain State, wherein it states that alleged late deliveries caused consequential damages which more than off-set the sum due on account. Therefore, the Court considers the issues of late deliveries and damages resulting therefrom as the only issues upon which a material factual controversy could exist. Counsel for both sides expend great energy over whether the fine aggregate delivered by use plaintiff to Mountain State met the agreed specifications. The results of such energy can be found in affidavits, depositions and memoranda submitted by counsel. But in view of the fact that the Court cannot find any basis for a specification issue in the pleadings, it considers the issue as not properly before the Court. Therefore, the issue will not be considered by the Court.

3. See Note 2.

delivered in October, 1972 as compared to 15,000 tons delivered in September, 1972. If counsel for Mountain State had checked the heading on the columns in which these figures were listed he would have discovered that these figures were yearly cumulative totals. The proper monthly delivery totals for the months of September and October, 1972 are 2,273.75 and 1,104.60 tons, respectively. These totals more than support Acme's claims of plant breakdown during October.

■ As for Mr. Lewis' statement that Acme was providing fine aggregate to other customers during October, that statement has been refuted in both affidavits and depositions by Acme's witnesses. Since affidavits containing statements made merely "on information and belief" will be disregarded, 6 *Moore's Federal Practice* para. 56.22[1]; *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *Mellen v. Hirsch*, 8 F.R.D. 248, 249–50 (D.Md., 1948), *aff'd*, 171 F.2d 127 (4th Cir., 1948), the Court accepts as not in genuine dispute the fact that all of Acme's production during the months in question was directed towards filling Mountain State's requirements.

■ Mountain State alleges in its memorandum in opposition to Acme's Motion for Summary Judgment that Acme "anticipate[d] being able to supply all demands of all customers . . . ." Any contract must be read with a degree of reasonableness. The Court accepts Mountain State's premise with the proviso that Acme anticipated filling all "reasonable" demands. It is undisputed that Acme actually supplied approximately twenty percent (20%) more fine aggregate than was anticipated under the contract during the term of the contract.[4] Over the entire thirty-seven (37) month period of deliveries [5] the average delivery to Mountain State totalled 1,139.91 tons, as compared with an anticipated average monthly delivery of 822.22 tons.[6] During the four months in controversy, admittedly when demand for material was highest, the average delivery was 2,362.74 tons, or thirty-five percent (35%) of the anticipated deliveries over the entire contractual period. This four month period represents only ten and a half percent (10.5%) of the total period covered by the contract. There can be no dispute as, to these figures, as they were computed by the Court from Acme's Exhibit "G". These figures speak for themselves and convince this Court that Acme was supplying all "reasonable" demands of all of its customers, i. e., Mountain State, during the entire period in controversy. Although Mountain State's requirements greatly increased

---

4. In its memorandum in opposition to Acme's Motion for Summary Judgment, Mountain State asserts that although deliveries totalled approximately 20% more than anticipated under the contract, 10–20% of the amounts of fine aggregate delivered were unusable due to failure to conform to specifications. As has been noted, that issue is not properly before the Court. However, even if it were, the only support for this allegation is found in Romey Swanson's deposition; a slight reference to quality can be found in Dean Lewis' affidavit. Mr. Swanson makes repeated assertions that the quality of the fine aggregate was inferior. But he had no idea of how much was unusable. He could supply no dates when inferior materials were delivered. He could not explain why objections were not made at the time of delivery. On the whole these mere allegations (both in Mr. Swanson's deposition and in Mountain State's memorandum) are not supported by specific facts admissible in evidence, and therefore are not sufficient to raise a genuine issue of fact. *Minnesota Mining & Mfg. Co. v. U. S. Rubber Co.*, 279 F.2d 409 (4th Cir., 1960); *also see, Liberty Leasing Company v. Hillsum Sales Corp.*, 380 F.2d 1013, 1015 (5th Cir., 1967); *Wood v. Breier*, 66 F.R.D. 8 (D.C.Wis., 1975).

5. July, 1971, through July, 1974.

6. Based on an anticipated total requirement of 29,600 tons.

**310**

during this four month period, Acme likewise increased its amounts of deliveries, in spite of plant breakdown, by converting another plant to the manufacture of fine aggregate. The fact that Acme could not keep up with Mountain State's requirements was a result of Acme's plant breakdown and Mountain State's underestimation of its needs at the time of contracting, with the resulting over-ordering during the four month period in controversy.

For the aforementioned reasons use plaintiff's Motion for Summary Judgment on defendant Mountain State's counterclaim is granted. It is further ordered that use plaintiff recover on their claim against defendants the sum of $6,585.95, plus interest from July 1, 1974. Costs in this action shall be borne by defendants.